UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HOWARD SALTEN,

                        Plaintiff,

              - against -

THE COUNTY OF SUFFOLK, SUFFOLK
COUNTY POLICE DEPARTMENT, SUFFOLK
COUNTY SHERIFF'S DEPARTMENT, STEVE
LEVY, THOMAS J. SPOTA, CHIRSTINE
MALAFI, RICHARD DORMER, SALVATORE
MANNO, CAROL ERBIS, DENNIS STEWARD,
MICHAEL MILTON, VINCENT F. DEMARCO,
and JOHN/JANE DOES 1-20,

                        Defendants.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 08-5294 (SJF) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

      The Complaint in this action was filed on December 17, 2008 alleging constitutional violations pursuant to 42 U.S.C. § 1983 and various state law claims. *See* DE 1. The first occurrence pertinent to this Report and Recommendation occurred on February 2, 2011 when Defendants' counsel contacted the Court regarding disputes that arose during Plaintiff's deposition. Based on what was discussed, the Court directed that the parties appear for a conference on February 3, 2011 at 9:30 a.m. to resolve all outstanding issues and for Plaintiff's deposition to continue thereafter at the Courthouse. *See* DE 38. During the February 3, 2011 Conference, Defendants' counsel advised the Court that the Plaintiff had refused to execute standard HIPAA authorizations for the release of his medical records. *See* DE 56 (Feb. 3, 2011 Transcript of Civil Cause for Docket Call) (hereafter "Feb. 3 Tr.") at 22-23. Because Plaintiff is claiming physical injuries incident to his arrest on December 18, 2005, his medical records are

essential evidence in this case. After being given the HIPAA forms by Defendants' counsel, the Plaintiff argued that he was not in a position to sign the forms without first having a chance to read them. *Id.* at 24. The Court instructed the Plaintiff to review the HIPAA forms during the day and come back to the Court with whatever issues he had with the forms before the day's end. *Id.* at 24-26.

The parties appeared before the Court for a second time on February 3, 2011 at 12:05 p.m. At this appearance, Defendants' counsel made an application with regard to the substance of Plaintiff's responses to the questions being asked at his deposition. I directed that the Plaintiff's deposition continue in my presence, which occurred for approximately 40 minutes. *See* Feb. 3 Tr. at 30-70. During that time, Plaintiff answered certain questions but was evasive in responding to others. At on point, Plaintiff was admonished by the Court that there was no "playing games here." *Id.* at 50. Notably, at various times during this 40 minute period, the Court intervened and actually asked the questions in order to obtain a responsive answer. *Id.* at 50-58.

The parties appeared in the courtroom for the third time at 2:30 p.m on February 3. *See* DE 40. Defendants' counsel advised the Court that the Plaintiff reverted back to being non-responsive and evasive, and therefore, requested that the Plaintiff's deposition be suspended until Defendants received Plaintiff's medical records. Feb. 3 Tr. at 71. This Court had the court reporter read back the last series of questions posed to the Plaintiff and the responses made by the Plaintiff. The Court found Plaintiff's answers to be non-responsive, evasive, and a periodic exercise in cat-and–mouse gamesmanship and so advised the Plaintiff. *Id.* at 74-80. Counsel reiterated that she gave Plaintiff medical authorizations for two facilities at which the Plaintiff

2

stated he had been treated, namely, Brookhaven Hospital and the Northport Veterans Administration Hospital. The Plaintiff objected to the HIPAA forms as being overly broad. *Id.* at 81-82. As had been explained to the Plaintiff previously, he is seeking damages for physical injury and emotional distress which he attributes directly to the incident occurring on December 18, 2005, at which time he was arrested and, according to the Plaintiff, assaulted by the police. Plaintiff indicated that he received treatment for both the physical and emotional injuries and that he intended to introduce evidence regarding his physical and mental/emotional health from the professionals who treated him. Plaintiff was advised, once again, that because he placed his physical and mental health directly at issue in this lawsuit, the Defendants had the right to discovery of all information related to those asserted damages, including his previous medical and mental health records because Defendants asserted a good faith basis for exploring the causes of such injuries, especially since there appears to be evidence of a prior injury relating to Plaintiff's rotator cuff. *Id.* at 82-83, 85.

Plaintiff persisted in his attempts to narrow the scope of the what was authorized in the HIPAA releases -- copies of which were downloaded from the government website and provided to the Plaintiff by Court staff. Taking into consideration the Plaintiff's objection, the Court directed that the HIPAA releases be limited to documents covering the period running from January 1, 2000 until the present and not the longer period sought by Defendants' counsel. *Id.* at 83. The Plaintiff, however, again objected to signing anything without first having the opportunity to "sit down and look at it and see what it is that really is being responsive." *Id.* at 88. In response, the Court gave the Plaintiff ten days to turn over the completed authorizations to Defendants' counsel. *Id.* at 89-90. While addressing the scheduling of future depositions, the

Plaintiff turned the discussion back to the HIPAA forms and stated: "[t]here are two hospitals that she is addressing. I have no problems with Brookhaven Hospital if she wants to give me another form." *Id.* at 95. After being asked whether the Plaintiff would "give her a general release" the Plaintiff responded "[o]n Brookhaven, yes." *Id.* However, with regard to the other facility, the Veterans Administration Hospital, the Plaintiff still contested providing a general release. *Id.* at 97.

The case was called for a fourth time in the late afternoon on February 3 in light of the manner in which the Plaintiff executed the HIPAA release for Brookhaven Hospital. *Id.* at 112. Specifically, the Plaintiff refused to fill out his date of birth and social security number on the form claiming that such information was not necessary in order to obtain his records. *Id.* at 113. Notwithstanding Plaintiff's allegation, the Court directed him to fill in his correct date of birth and full social security number based on the Court's experiences with attempting to obtain records from medical practices and facilities. *Id.* at 116. Further, the Court directed the Plaintiff to fill in the box "Date or event on which this authorization will expire" with March 8, 2011 (30-days from February 3) instead of "one time only," as Plaintiff initially wrote on the form. *Id.* at 116-117.

After being provided with another blank HIPAA form, the Plaintiff filled out the necessary portions, but this time, crossed out the word "voluntary" and wrote in the word "forced" in regard to whether the release was being given voluntarily. *Id.* at 120. After being questioned as to why the Plaintiff felt "forced," he explained "[i]t is my perception, possibly erroneously, but it is still my perception and this is the feeling I have and I'm not going to be able to shake it." *Id.* at 124. However, after being asked whether the Plaintiff understands that he has

4

a right not to sign the HIPPA form, the Plaintiff answered "Correct." *Id.* at 125. Taking all that occurred on February 3 into account, this Court stated on the record:

> Sometime earlier we had a discussion about the records from Brookhaven Hospital versus the Northport VA Hospital and at one point there was a representation by defendant [sic] Mr. Salten that he would provide a general release for the Brookhaven Hospital records. And so the Court's provided him with a HIPAA compliant release form to be completed for purposes of requesting that information. This information the Court already found relevant for discovery purposes to the damages claim asserted by the plaintiff here related to the underlying incident in which he claims to have been assaulted, beaten, tasered, etcetera. The Court's already made a finding that the records at issue here, as well as at the Veterans Hospital are in fact relevant to this case and are to be produced. The HIPAA forms that are here I'm going to direct now, at least with regard to Brookhaven Hospital, that the form be filled out and left appropriately as the language of the form stands. The plaintiff can either proceed to complete the form without any other alterations such as we discussed before the break, or he can choose not to. It's entirely up to him. I will make it clear, however, that if this HIPAA compliant form is not completed in the manner that I've described, that I will be left with no alternative but to -- because I'm not going to have the form go to the hospital records department in that condition -- then I will make a recommendation to Judge Feuerstein that any damages related to these records be precluded, as I would make the same ruling with respect to any records from the VA Hospital if the plaintiff opts not to allow the defendants to pursue this area by obtaining those medical records as they are entitled to do and which I've already found that they're entitled to do.

*Id.* at 126-27. In response, the Plaintiff stated that "I will submit something on the 8th" *Id.* at 128. In fact, the Court gave the Plaintiff until February 14, 2011 to provide defense counsel with properly executed HIPAA forms as to both Brookhaven Hospital and the VA Hospital. *Id.* at 130.

On February 9, 2011, the Plaintiff faxed to the Court and to Defendants' counsel a letter with a HIPAA release form for the Brookhaven Hospital annexed to it. *See* DE 43.

5

Notwithstanding the directives given on February 3, the HIPAA form lacked the Plaintiff's date of birth and social security number. In addition, the Plaintiff limited the date of records to be released by the hospital to December 18 and 19, 2005 and failed to check the box which would release any and all mental health records of the Plaintiff, despite the Court's multiple directives to the Plaintiff while he was in Court four different times on February 3, 2011. *Id.* On February 13, 2011 the Court received another fax, this time with a HIPAA release form for the VA Hospital annexed. DE 44. Although this HIPAA form included Plaintiff's date of birth, the Plaintiff only provided the last four digits of his social security number. In addition, the Plaintiff only authorized the release of documents up through September 31, 2010 (instead of the present date) and did not check off the necessary box for mental health records. *Id.* These actions were once again contrary to the Court's directives to the Plaintiff on February 3, 2011. Based on Plaintiff's continued failure to comply with the Court's Orders, the Defendants' moved to dismiss the action. *See* DE 46. Notwithstanding the Plaintiff's continued disregard of the Court's directives, in an Order dated February 17, 2011, the Court reluctantly denied Defendants' motion to dismiss and put the Plaintiff on final notice that he had until February 25, 2011 to cure the deficiencies in the HIPAA releases. DE 47. However, the Court made clear that

> If plaintiff does not provide fully compliant HIPAA releases to defendants' counsel by February 25, then I shall issue a Report & Recommendation to Judge Feuerstein recommending that plaintiff be precluded from presenting any evidence of damages purportedly relating to the underlying incident in this action based upon his ongoing failure to comply with the Orders of this Court.

*Id.*

The Court received another fax from the Plaintiff on March 1, 2011. *See* DE 49. After reviewing its contents, the Court was under the impression that the Plaintiff had complied with the February 17, 2011 Order. On that basis, the Court set a status conference for March 11, 2011. *See* DE 50. However, Defendants' counsel advised the Court on March 3, 2011 that she had not received any HIPAA releases from the Plaintiff and she requested that the Court issue the Report and Recommendation mentioned in the February 17, 2011 Order. *See* DE 52.

At the March 11 Conference, the Plaintiff continued to insist that the HIPAA forms he faxed to the Court and to Defendants' counsel "were sufficient to get the information."[1] *See* DE 55 (March 11, 2011 Transcript of Civil Cause for Conference) (hereafter "Mar. 11 Tr.") at 7. Despite Plaintiff's continued objection that the forms provided were sufficient and that Defendants' counsel never even bothered to submit the HIPAA forms he provided, the Court concluded:

> I am not going to require the defendants to go off on a wild goose chase to serve forms that aren't properly filled out because you've elected to do it the way you choose to do it, sir. And I've given you every opportunity to take care of this in a reasonable fashion. And we've attempted from the beginning here to preserve your rights. I'm sorry that you disagree but that's the way things are.

*Id.* at 20. Accordingly, the Court informed the Plaintiff that

> I'm recommending that your claim for damages not be permitted. Liability is entirely yours. But the claim for damages because of the issues that have been addressed here, I am recommending that you not be permitted to raise claims for damages based on what's happened. So you can ask for nominal damages which is I am sure something she'll take up with you.

---

[1] The Court came to learn from the Plaintiff at the March 11 Conference that Plaintiff's deliberate omissions of his social security and birth date stems from a lawsuit brought against him by the Brookhaven Hospital for unpaid fees.

*Id.* at 32.

Given Plaintiff's continued willful and intentional disregard of the Court's directives, the Court is left with no other alternative but to recommend that Plaintiff be precluded from seeking relief in the form of compensatory damages in this case pursuant to Federal Rule 37(b).  *See* Fed. R. Civ. P. 37(b)(2)(A)(ii) (allowing court to prohibit "the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence" when party fails to obey an order to provide or permit discovery).  Accordingly, I respectfully recommend to Judge Feuerstein that the Plaintiff be precluded from asserting damages in this case for his alleged physical and emotional injuries.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6(a) and (e).  Such objections shall be filed with the Clerk of the Court via ECF, **except in the case of a party proceeding *pro se*.  *Pro se* Plaintiff Howard Salten shall file any objections in writing with the Clerk of the Court within the prescribed time period noted above.  A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Feuerstein, and to my Chambers as well.  Any requests for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d**

**52, 60 (2d Cir. 1996).**

Defendants' counsel is directed to serve a copy of this Report and Recommendation forthwith upon Plaintiff *pro se* by overnight mail and first class mail and to file proof of service on ECF.

**SO ORDERED.**

Dated: Central Islip, New York
April 6, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge